## ROSS LUMBER CO. v. HUGHES LUMBER CO.

(Circuit Court of Appeals, Fifth Circuit. April 23, 1920.)

No. 3455.

1. Sales ⬋172—Contract abrogated, where government fixed price and price list suspended publication.

A contract for the sale of lumber at prices varying from time to time to conform to a specified price list was abrogated, where the government fixed a maximum price, less than that fixed by such list, and the publishers ceased publishing the list, as the criterion upon which the price depended ceased to exist without fault of either party, and, though the contract was construed as a sale at the market price, the price fixed by the government was not a market price such as was contemplated.

2. Appeal and error ⬋1047 (1)—Errors harmless, when verdict properly directed.

Where a verdict for defendant was properly directed, the admission or rejection of testimony of no value on the question decided was harmless.

In Error to the District Court of the United States for the Northern District of Alabama; William I. Grubb, Judge.

Action by the Ross Lumber Company against the Hughes Lumber Company. Judgment for defendant, and plaintiff brings error. Affirmed.

⬋For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Warren Grice and J. Ellsworth Hall, both of Macon, Ga., Henry A. Jones, of Tuscaloosa, Ala., and Chas. J. Bloch, of Macon, Ga. (De Vane K. Jones, of Tuscaloosa, Ala., of counsel), for plaintiff in error.

J. M. Foster, of Tuscaloosa, Ala. (Fleetwood Rice and James Rice, both of Birmingham, Ala., and R. C. Foster, of Tuscaloosa, Ala., of counsel), for defendant in error.

Before WALKER, Circuit Judge, and CALL and HUTCHE-SON, District Judges.

CALL, District Judge. An action was brought to recover damages for the breach of three contracts for the sale of lumber by the defendant in error (hereinafter called defendant) to the plaintiff in error (hereinafter called plaintiff). These contracts were designated as "Plaintiff's Order A, Defendant's S528," for the sale of 4,000,-000 feet of pine boards, "Plaintiff's Order B, Defendant's S539," for 2,400,000 feet, and "Plaintiff's Order C, Defendant's S530," for 2,400,000 feet.

The two orders, A and B, were sold by the plaintiff to different parties at a profit of $1.30 per 1000 feet; the last order, C, was for purposes of resale by the plaintiff. The defendant was fully advised of the resale of orders A and B at the profit of $1.30 per 1000 feet at the time the orders were placed and accepted. On order C the plaintiff claimed a profit of $4 per 1000 feet; on order A 561,629 feet, on order B 553,515 feet, and on order C 42,130 feet, had been delivered and paid for before the contended breach occurred. The base price, delivered in Chicago, was $26.20 per 1000 feet, taking one order as an example. The others are similar in terms, so far as the point involved is concerned. This price is to vary from time to time as established by Shuster's concession sheet of January 15, 1918, in connection with the list of September 10, 1912, as a basis, and the price mentioned in the order shall be increased or reduced semimonthly to correspond with the change made by Shuster's semimonthly concession sheets, used as above. These changes in price were to take effect on shipments made on and after the 5th of each month as to lists dated the 1st of each month, and on and after the 20th of each month as to lists issued the 15th of each month. The deliveries were to be in a certain number of feet each month, as cars could be obtained for the purpose, each party obligating itself to use its best endeavors to that end.

On June 10th the government fixed a maximum price at which lumber of this class could be sold commercially, and affixed a penalty for selling above that price. The last concession sheet issued by Shuster was June 18, 1918. The defendant continued shipping lumber called for in these orders until August, 1918, at prices fixed in the concession sheet of June 18th, when, after the exchange of letters and interviews between the representatives of the parties, the defendant refused to ship any more lumber, and claimed that the contracts were no longer in existence, that there was no way to fix the price, the government having fixed a maximum price at which such

lumber could be sold in all commercial transactions, there was no market price, and Shuster had discontinued his semimonthly concession sheets; the plaintiff, on the contrary, contends that the contracts were subsisting obligations, and the maximum price fixed by the government was the market price which would govern in the contracts. Shuster was recognized by all yellow pine lumber dealers as the official printer of the Manufacturers' Association, and that Shuster's market list, and Shuster's concession sheets, taken together, constituted the report of the market price of yellow pine lumber; that the market had been regularly published prior and up to September 10, 1912; that the price fixed by the market list and concession sheets was higher than the maximum price fixed by the government. The defendant was obligated to furnish the lumber at a price in an amount specified, below the price as fixed by the Shuster list and semimonthly concession sheets; that at the time these contracts were entered into there were other publications than Shuster, which assumed to show the market price of lumber; that all of these varied more or less from the prices shown by Shuster.

On December 31, 1918, the government abrogated the maximum price thereto fixed by it. This action was commenced December 6, 1918, and on the trial of the cause, at the conclusion of all the testimony, the judge instructed the jury to find a verdict for the defendant, which was done, and judgment entered in favor of the defendant. It is from this judgment that this writ of error is sued out.

The trial judge expressed the opinion that the parties to the contracts sued on understood that the "market price" mentioned in the contracts should be the price regulated by actual sales, and not regulated by the government; that the substitution of the government price fixed by the government, in so far as these orders were concerned, would entitle either party to say they were no longer required to perform.

There were a number of assignments of error, but in the view we take of the case it is only necessary to consider the fifth assignment, which is as follows:

"(5) The District Court erred in giving the jury the following charge: 'Gentlemen of the jury, it seems to me in this case the plaintiff is not entitled to recover, for the reasons you have heard, and, therefore, I direct a verdict for the defendant.'"

[1] The question, therefore, for decision on this writ of error is: Was that charge correct? Under the state of the evidence, in which there was no conflict, could the plaintiff recover damages because the defendant refused to ship lumber after August, 1918? As remarked by counsel, this case is peculiar, arising as it does from the war conditions existing at the time of making the contracts, and during a part of the time within which it was to be performed. Counsel could find no authorities bearing directly on the question at issue in this case.

Now, there can be no question that the parties contracted with each other that the price should be fixed by the price list of September 10, 1912, and the semimonthly concession sheets issued by Shuster, the

prices to vary according to a calculation based upon these. The data upon which this calculation was to be made, without fault of either party, but owing to war conditions, became and were unattainable. In place of the Shuster semimonthly concessions, which were based upon reports of actual sales, and which were recognized by all dealers in yellow pine lumber as fixing the market price of the product, there is substituted the maximum price fixed by the government. The criterion upon which the price of the commodity to be delivered by the defendant to the plaintiff, a necessary term of a binding contract, thus, without a fault of either of the parties, ceased to exist, and either party could refuse to be further bound by the terms.

But, if that is not correct, and we say that the intention of the parties was that price to be paid by the plaintiff was the "market price" existing at the times of the different deliveries, we are still left in the condition of having no criterion by which such price can be fixed, unless we go further and say the maximum price fixed by the government was the "market price." This is, as we understand it, the contention of the plaintiff.

It is uncontradicted that, although there were other publications carrying quotations of sales of lumber, they all varied from the prices fixed by Shuster's price list and semimonthly concessions. This is very persuasive that for that reason the parties contracted with reference alone to that method of fixing the price, but also shows the impossibility of arriving at a "market price" by looking to these other publications. Could the act of the government, under the war conditions then existing, fixing an arbitrary maximum price, establish a market price? We think not, and this view seems to be supported by the Supreme Court of Michigan in Lovejoy et al. v. Michels, 88 Mich. 15, 49 N. W. 901, 13 L. R. A. 770. While this case involves a different consideration of facts than in the instant case, it, with the discussion contained in note on page 771 of 13 L. R. A. is enlightening on the question in this case.

The idea of a market price is based upon the untrammeled dealing in a commodity, by sellers and buyers unhampered by price fixing by governments or monopolies. There was no such market existing subsequent to June 10, 1918, when the government fixed the maximum price. We think the trial judge properly gave the peremptory charge challenged in assignment No. 5, for the reason assigned by him, as well as the first reason mentioned heretofore. This being so, the charges requested by defendant could serve no purpose in the case.

[2] As to the admission or rejection of offered testimony, the assignments on same are of no value in the consideration of the question decided by this court, and, if error has been committed, it is harmless.

Finding no error in the record, the judgment is affirmed.